IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KARL HAYWOOD,<br><br>    **Plaintiff,**<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC.,<br>ANTHONY WILLS, DEREK BRANDT,<br>LATOYA HUGHES, JOHN DOE<br>CORRECTIONAL OFFICERS 1-2,<br>JANE DOE NURSE, and<br>JOHN DOE SERGEANT,<br><br>    **Defendants.** | Case No. 3:22-CV-731-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Karl Haywood, an inmate of the Illinois Department of Corrections ("IDOC") who is currently housed at Hill Correctional Center, brings this action under 42 U.S.C. § 1983 alleging his Eighth Amendment rights were violated while he was housed at Menard Correctional Center ("Menard"). (Docs. 1, 33).

Now pending before the Court is a Motion for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Defendant Wexford Health Sources, Inc., ("Wexford") (Doc. 59), a Motion to Dismiss for Failure to State a Claim filed by Defendant Anthony Wills (Doc. 49), and a Motion to Dismiss for Failure to State a Claim filed by Defendant Latoya Hughes (Doc. 70). For the following reasons, the motions are granted.

### BACKGROUND

On February 25, 2021, Haywood submitted an emergency grievance related to an

incident that occurred on February 18, 2021, while he was housed at Menard. (Doc. 60-1 at p. 18). (*Id.*). In his grievance, Haywood stated that he was sleeping in his bunk when he was sprayed with O.C. spray, also known as pepper spray or mace, by Sergeant Derek Brandt. (Doc. 60-1 at p. 18). His eyes, lungs, and skin began to burn, and he started coughing and complaining that he could not breathe. (*Id.*). He screamed, but Sergeant Brandt told him to shut up. (*Id.*). Brandt then left the gallery as Haywood, an asthmatic, struggled to catch his breath. (*Id.* at p. 19). Haywood also fell and hit his head because he could not see. (*Id.*). Brandt returned about 20 minutes later with the tactical team, and they took Haywood to the Health Care Unit. (*Id.*). There, Haywood's eyes were washed out, but he was denied access to his inhaler for his asthma. (*Id.*). He was then taken to segregation, where he remained until February 23, 2021. (*Id.*). While he was in segregation, Haywood was denied a change of underwear (his was soaked with pepper spray), as well as access to the shower, soap, and further medical care for his burning skin and face. (*Id.*). As relief, Haywood requested an independent investigation into staff conduct, disciplinary action for Sergeant Brandt, further medical care for his injuries, and a transfer for safety. (*Id.* at p. 18).

On March 9, 2021, the Chief Administrative Officer ("CAO") reviewed the grievance and determined it was not an emergency. (*Id.*). On March 23, 2021, a prison counselor reviewed the grievance and noted that Defendant Brandt had denied Haywood's allegations. (*Id.*). Thus, the counselor recommended that the grievance be denied. (*Id.*).

Seven months later, the grievance was investigated by a grievance officer. (*Id.* at

p. 16). As part of that investigation, Angela Crain, the Health Care Unit Administrator, reviewed Haywood's records from February 18, 2021. (*Id.* at p. 17). Crain reported that Haywood was seen in the HCU First Aid for chemical gas exposure, but that he was not in respiratory distress and that three peak flow readings were obtained. (*Id.*). Haywood was observed to be within the chronic clinic peak flow guidelines for asthma. (*Id.*). The grievance officer thus recommended that the grievance be denied. (*Id.* at p. 16). The CAO concurred in the denial on October 14, 2021. (*Id.*).

Haywood timely appealed the denial of his grievance to the Administrative Review Board ("ARB"). (*Id.*). The ARB denied Haywood's appeal on January 3, 2022, stating: "Staff misconduct cannot be substantiated. Grievant has access to medical care. Treatment is at the discretion of IDOC physicians. Discipline of staff is an administrative decision. Grievant may submit a request to NSC for any issues that arise." (*Id.* at p. 15).

Haywood filed a second grievance on August 2, 2021. (Doc. 60-1 at pp. 24-27). In this grievance, Haywood complained that IDOC and Menard are severely overcrowded, leading to doubling of cells that are meant to be single cells. (*Id.*). He continued: "This causes breakdowns in medical care, dental care, and mental health." (*Id.*). He further stated that the overcrowding was leading to increased violence among inmates and excessive force being used by the tactical team at Menard. As relief, Haywood requested to be transferred out of Menard and its extremely violent conditions, so as to eliminate his exposure to the tactical team's aggressive and violent actions. (*Id.*).

Haywood's second grievance was reviewed by a counselor on August 19, 2021, who advised that the tactical team was used for the safety and security of the institution,

inmates, and staff. (*Id.* at p. 24). Further, if Haywood is in physical or mental distress, he is encouraged to speak with a mental health or healthcare professional, as he had done multiple times over the past several months. (*Id.*). On September 2, 2021, the August 2, 2021 grievance was reviewed by a Grievance Officer and the CAO, and it was found to be moot. (*Id.* at pp. 22-23). Haywood appealed this grievance as well. (*Id.* at p. 22). The ARB denied the appeal, as it found the issue was appropriately addressed by the facility administration. (*Id.* at p. 21). It also found that it could not substantiate staff misconduct, use of the tactical team is an administrative decision, and medical and mental health treatment were provided. (*Id.*).

Haywood filed this action on April 14, 2022. (Doc. 1). He now proceeds on the Amended Complaint in which he alleges, among other things, that Defendant Brandt told the Health Care Unit that Haywood was a "staff assaulter" and not to treat him.[1] (Doc. 33). Haywood alleges the following counts:

Count I: Excessive force in violation of the Eighth Amendment against Defendant Brandt;

Count II: Deliberate indifference/denial of medical treatment in violation of the Eighth Amendment against all individual Defendants;

Count III: Unconstitutional conditions of confinement in violation of the Eighth Amendment against individual Defendants Brandt, John Doe Sergeant, and John Doe Correctional Officers 1-2;

Count IV: Deliberate indifference/denial of medical treatment in violation of the Eighth Amendment against Defendants Wexford, Hughes, and Wills in their official capacities; and

---

[1] Defendant Brandt's report naming Haywood a "staff assaulter" was expunged on February 23, 2021, because it was determined that Haywood did not actually assault Brandt.

Count V: Unconstitutional conditions of confinement in violation of the Eighth Amendment against Defendants Hughes and Wills in their official capacities.

## ANALYSIS

### I. Motion for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Wexford

Defendant Wexford has moved for summary judgment, arguing that Haywood did not exhaust his remedies at the institutional level as to his claim in Count IV that Wexford violated his Eighth Amendment rights. (Doc. 59).

Summary judgment is proper if the movant shows that no material facts are in genuine dispute and the movant is entitled to judgment as a matter of law. *Machicote v. Roethlisberger*, 969 F.3d 822, 827 (7th Cir. 2020) (citing FED. R. CIV. P. 56(a)). In determining whether a genuine issue of fact exists, the Court views the evidence and draws all reasonable inferences in favor of the non-movant. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[i]nferences that rely upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014).

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

"Exhausting administrative remedies requires inmates to follow each step prescribed by the state's administrative rules governing prison grievances." *Loving v. Gomez*, No. 19-CV-00029, 2022 WL 3026932, at *4 (N.D. Ill. Aug. 1, 2022) (citing *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020)). Under Illinois's grievance process, a prisoner may file, within 60 days of an incident, a complaint to a counselor or grievance officer. 20 ILL. ADMIN. CODE § 504.810(a)–(b). The counselor or officer reports factual findings and recommendations to the CAO, who provides a decision to the prisoner. *Id.* § 504.830(d). If the prisoner is unsatisfied with the response, he can appeal to the ARB within 30 days of the decision. *Id.* § 504.850(a)–(f). The ARB then makes a final determination of the grievance and sends a copy of its decision to the prisoner. *Id.* § 504.850(e).

Here, Wexford acknowledges that Haywood exhausted the grievance procedure as to his February 25, 2021 and August 2, 2021 grievances. It argues, however, that Haywood did not exhaust his current claim against Wexford because the grievances made no reference to Wexford, nor did they describe Wexford in any manner.

Haywood, in response, argues that he was not required to name Wexford in his grievance. Instead, § 504.810 only requires that a prisoner articulate the factual basis for the grievance, including what happened, when, where, and who was involved. And Haywood grieved that staff at the Health Care Unit denied him his inhaler even though he could not catch his breath. Because Wexford operates the Health Care Unit, Haywood argues, it was put on notice of the incident. Haywood also asserts that, when drawing all reasonable inferences in his favor, his February 25, 2021 grievance operated to exhaust his claim in the Amended Complaint that Wexford had an unconstitutional policy of

depriving medical care to inmates who are alleged to be "staff assaulters."

In reply, Wexford argues that Haywood is not claiming a broad denial of treatment by the Health Care Unit as a whole, but rather that one Jane Doe Nurse refused to allow use of his inhaler on a single occasion. Wexford also argues that there is no mention whatsoever in Haywood's grievances of any unconstitutional policy or practice attributable to Wexford.

Because there are no disputes of material fact, the Court did not hold an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

Based on the evidence in the record, the Court agrees with Wexford that neither of Haywood's grievances provided enough information to alert the state that he had an issue with Wexford. *See Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) (noting that the grievance process is designed to "alert the state to the problem and invite corrective action"). The only complaint that Haywood made about medical care in his February 25, 2021 grievance was that "They . . . denied me my inhaler spray for my asthma." (Doc. 60-1 at p. 19). While an inmate need not specifically name Wexford in a grievance, Haywood's complaint about one nurse's refusal to provide him with an inhaler falls well below the threshold for exhausting his claim against Wexford.

The Court further agrees with Wexford that Haywood never grieved the denial of medical care on the basis of being a "staff assaulter." True, there is no requirement in the Administrative Code that an inmate spell out a specific policy or practice in his grievance to fully exhaust a *Monell* claim against Wexford. *Calderson v. Wexford Health Sources, Inc.*, No. 21-CV-1061-DWD, 2023 WL 1100261, at *5 (S.D. Ill. Jan. 30, 2023) (citing *Loving v.*

*Gomez*, 2022 WL 3026932, *4 (N.D. Ill. 2022) (collecting cases and finding "the law does not require detailed specificity when Wexford is the defendant" because complaints about medical failures clearly invoke Wexford and its employees)). Indeed, district courts "have held that grieving activities for which Wexford was responsible, or for which Wexford was involved in the decision-making process, are generally sufficient to put the prison on notice that the plaintiff was grieving a policy or practice of the corporation." *Morrow v. Wexford Health Sources, Inc.*, No. 3:20-CV-00664-GCS, 2021 WL 3030329, at *4 (S.D. Ill. July 19, 2021). Likewise, where an inmate complains about the "broad denial of proper treatment by the health care unit as a whole," courts have found that the inmate has sufficiently grieved a policy or practice of Wexford resulting in inadequate medical care. *Id.*

Here, however, Haywood did not grieve the broad denial of medical care; he grieved one instance of a nurse refusing to provide an inhaler. He also made no mention whatsoever in his grievance—as he now alleges in his Amended Complaint—that Brandt told Jane Doe Nurse not to treat Haywood because he was a "staff assaulter." The Court is mindful that it must make all reasonable inferences in favor of the non-movant, but it is unreasonable to infer that Haywood was complaining about Wexford's unconstitutional policy of denying medical care to "staff assaulters" based on one sentence in Haywood's grievance about the denial of an inhaler.

Because Haywood did not administratively exhaust his claim against Wexford, Wexford is entitled to summary judgment.

## II.     Motions to Dismiss filed by Wills and Hughes

Defendants Anthony Wills and LaToya Hughes have moved to dismiss the claims against them in their official capacities as Warden of Menard and Acting Director of the IDOC, respectively. (Docs. 49, 70). Both Defendants argue that Haywood's request for injunctive relief has been rendered moot by his transfer from Menard to Hill Correctional Center. Furthermore, his request for monetary damages against them is barred by the doctrine of sovereign immunity.

In response, Haywood argues that Hughes, as the IDOC's Acting Director, and Wills, as the Warden of Menard, are liable for system-wide failures that occur throughout IDOC facilities. Because he seeks a preliminary and permanent injunction against these Defendants requiring "correction of unconstitutional practices and policies," Haywood argues, his claims against Wills and Hughes for injunctive relief are not moot. Haywood also concedes that he does not seek monetary damages from Wills or Hughes.

The Seventh Circuit has long held that "when a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot." *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004) (citing *Higgason v. Farley*, 83 F.3d 807 (7th Cir. 1995) (per curiam)). But a prisoner who attacks "the IDOC's practices as a whole" and who alleges he was adversely affected by those practices is not barred by the doctrine of mootness at the motion to dismiss stage. *Id.*

In this case, Haywood alleges that Wills, as Warden of Menard, was responsible for the creation, implementation, and oversight of policies, practices, and procedures at

Menard, while Hughes, as Acting IDOC Director, has overall responsibility for the IDOC's policies and procedures, as well as the administration of all corrections facilities in the state. (Doc. 33 at ¶¶ 102-03). Haywood then claims both Defendants had notice of the widespread practice of healthcare employees and correctional officers delaying or denying medical care to inmates at Menard—and doing nothing to ensure that Menard inmates received adequate and timely medical care. (Doc. 33 at ¶ 105). Specifically, Haywood asserts, widespread policies or practices existed at Menard pursuant to which inmates received unconstitutionally inadequate healthcare. (*Id.* at ¶ 106). Haywood also claims that both Defendants had notice of widespread policies and practices at Menard whereby cleaning products were only provided once a week for solitary confinement cells, leading to unsanitary conditions in the cells. (*Id.* at ¶¶ 113-14). As a result, Haywood's time in solitary confinement at Menard caused him substantial physical and psychological harm. (*Id.* at ¶ 118).

The allegations in the Amended Complaint are limited to Haywood's time at Menard and do not attack IDOC's practices as a whole. Likewise, Haywood does not claim that he has continued to be harmed by IDOC's policies since moving to Hill. Because Haywood's claims are related to a condition specific to a particular prison—Menard—his transfer to Hill renders his claim for injunctive relief moot. Defendants Wills and Hughes will be dismissed.

## CONCLUSION

For these reasons, the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Defendant Wexford Health Sources, Inc. (Doc. 59) is

**GRANTED**. Wexford is **DISMISSED without prejudice**.

The Motion to Dismiss for Failure to State a Claim filed by Defendant Anthony Wills (Doc. 49) is **GRANTED**. Wills is **DISMISSED without prejudice**.

The Motion to Dismiss for Failure to State a Claim filed by Defendant Latoya Hughes (Doc. 70) is also **GRANTED**. Hughes is **DISMISSED without prejudice**.

Judgment will be entered accordingly at the close of the case.

**IT IS SO ORDERED.**

DATED:   March 21, 2024

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**