## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

KARL HAYWOOD,

      Plaintiff,

v.

WEXFORD HEALTH SOURCES, INC.,
ANTHONY WILLS, DEREK BRANDT,
LATOYA HUGHES, JOHN DOE
CORRECTIONAL OFFICERS 1-2,
JANE DOE NURSE, and
JOHN DOE SERGEANT,

      Defendants.

Case No. 3:22-CV-731-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Karl Haywood, an inmate of the Illinois Department of Corrections ("IDOC") who is currently housed at Hill Correctional Center, brings this action under 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was housed at Menard Correctional Center ("Menard"). (Doc. 106). Now pending before the Court is a Motion to Dismiss under Rule 12(b)(6) filed by Defendants Anthony Wills and LaToya Hughes (collectively, "Defendants"). (Doc. 134). For the following reasons, the motion is granted in part and denied in part.

### BACKGROUND

The Court accepts as true the following facts, which are taken from Haywood's second amended complaint ("SAC," Doc. 106). During the events at issue in this litigation, Haywood was housed at Menard. On February 17, 2021, multiple inmates in Menard's East House, where Haywood resided, began throwing trash and debris from their cells. (SAC ¶ 13).

Neither Haywood nor his cellmate, Lason Elliott, participated in throwing debris out of their cells. (*Id.* ¶ 16). After several inmates began to set fire to the debris, officers entered the area to quell the situation and set up cameras to document any further violations. (*Id.* ¶ 14). The officers cleaned up some of the trash but left several items of debris in front of a cell neighboring Haywood's. (*Id.* ¶ 15).

The next day, Correctional Officer Derek Brandt and another officer passed by Haywood's cell and engaged in an argument with Elliott, Haywood's cellmate. (*Id.* ¶¶ 17-18). At the time, Haywood was asleep in his bunk. (*Id.* ¶ 19). As Officer Brandt and the other officer were about to leave, Elliott called Brandt a "bitch." (*Id.*). Brandt immediately turned around and sprayed pepper spray into the cell indiscriminately, hitting Haywood in the face. (*Id.* ¶¶ 19-20). The pepper spray inflamed Haywood's asthma and temporarily blinded him. (*Id.* ¶ 20). He screamed for help, but Brandt told him to "shut the fuck up," leaving him in the cell without medical attention for approximately twenty minutes. (*Id.*). Instead of arranging for prompt medical care, Officer Brandt assembled a team to conduct a forced cell extraction to transport Haywood to the medical unit. Menard's medical staff ultimately denied Haywood his prescribed inhaler and other treatment, allegedly in an effort to cover-up the extent of his injuries. (*Id.* ¶ 26).

After the incident, Officer Brandt prepared a report faulting Haywood. He stated falsely that Haywood was standing at the front of the cell with Elliott, throwing Styrofoam meal trays at him. (*Id.* ¶¶ 21-22). Officer Brandt also denied that there were any witnesses to the incident, even though another officer was with him at the time. (*Id.* ¶¶ 23-24). Due to Brandt's report, Haywood was placed in restrictive housing for five days and faced a disciplinary hearing based on the false report. (*Id.* ¶ 25). In addition, the cell where he was

moved had a strong odor of mildew, and its walls were smeared with blood and feces. (*Id.* ¶ 27). Menard's staff did not give him a pillow or sheets, and the mattress smelled like urine. (*Id.* ¶ 27). The sergeant responsible, designated here as "John Doe," refused Haywood's request for cleaning supplies and ignored his concern that his mental illness would be exacerbated by the conditions in the cell. (*Id.* ¶¶ 28-29).

Haywood filed an internal grievance seeking medical care and an independent investigation of the incident with Brandt. (*Id.* ¶ 30). His grievance specifically requested that video footage from the cameras in East House be preserved. (*Id.*). Anthony Wills, who was Menard's warden at the time, relied on Brandt's report and denied the grievance. (*Id.* ¶ 31). Haywood acknowledges that the disciplinary action against him was later expunged because Elliott accepted full responsibility, but he complains that no action was taken to punish Brandt or preserve the video evidence. (*Id.* ¶¶ 31, 34). Haywood says Wills's refusal to take proper action against Brandt left him vulnerable to retaliation. (*Id.* ¶ 32). He alleges that the entire incident has caused a worsening of his asthma and his mental health. (*Id.* ¶ 33).

Haywood filed this action on April 14, 2022. (Doc. 1). The Court later recruited counsel to represent him *pro bono*. (Doc. 22). In the second amended complaint, Haywood raises claims against four individuals: Officer Brandt, Warden Wills and IDOC Acting Director LaToya Hughes, in both their individual and official capacities, and an unnamed IDOC Sergeant, presently designated as "John Doe Sergeant." In the motion now before the Court, Wills and Hughes seek to dismiss the Haywood's four claims against them. Haywood alleges that (1) Wills and Hughes, in their official capacities, ratified Officer Brandt's unlawful conduct in violation of the Eighth and Fourteenth Amendments (Count V); (2) Wills, in his individual capacity only, was deliberately indifferent to his need for medical treatment in

violation of the Eighth Amendment (Count VI); (3) Wills and Hughes, in both their official and individual capacities, violated his right to due process by destroying certain video evidence (Count VII); and (4) Wills and Hughes, in both their official and individual capacities, negligently spoliated video evidence in violation of state law (Count VIII). Haywood seeks, among other things, compensatory and punitive damages and an order directing Wills and Hughes to preserve video evidence, "refrain from continuing to perpetuate the false narrative" of the event, correct his record, and punish Brandt.

## LEGAL STANDARDS

A defendant's motion to dismiss may be granted in instances where the plaintiff's complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a plaintiff to survive a motion to dismiss, the complaint must contain sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To be plausible, an allegation must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The factual allegations stated in the second amended complaint will be taken as true and interpreted in "the light most favorable" to the plaintiff. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 504 (7th Cir. 2013). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not entitled to the presumption of truth. *Ashcroft*, 556 U.S. at 678. This standard does not require "detailed factual allegations." *Bell Atl. Corp.*, 550 U.S. at 555. Rather, it simply requires that that the plaintiff gives "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

## DISCUSSION

Wills and Hughes argue that all the claims against them are legally defective and must be dismissed. They reason that Haywood's official capacity claims are barred by sovereign immunity to the extent he seeks money damages and that both the Prison Litigation Reform Act and sovereign immunity bar his request for injunctive relief because his request is not related to an ongoing harm and is not prospective in nature. They also argue that Haywood assumes they can be held liable as final policymakers under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), but that theory is not valid here because they are state officials rather than municipal officers.

Defendants also argue that Count V, which concerns the denial of medical care, must be analyzed only under the Eighth Amendment rather than the Fourteenth Amendment's Due Process clause. To that end, they say the complaint contains no allegations that they ever were personally aware of any constitutional violations. Defendants also argue that Count VI, which deals with Wills's alleged deliberate indifference, fails because the only allegation of wrongdoing is that he deemed Haywood's grievance a non-emergency and denied it. Regarding Count VII, which proceeds on the theory that Defendants violated the Fourteenth Amendment by destroying evidence, they argue the second amended complaint offers only threadbare allegations that they should have been aware of a need to retain the footage. Moreover, Hughes was not employed as IDOC's Acting Director at the time of the events at issue in this lawsuit, and additional footage has been located in any event.

Defendants also assert that Haywood's federal claims are barred by the two-year statute of limitations applicable here, since the relevant incident occurred in February 2021, approximately four and a half years before he sought leave to file the second amended

Page 5 of 16

complaint. They add that Haywood has not alleged any basis to toll the limitations period here. Finally, Defendants argue that the state law claim is barred by state sovereign immunity and is inadequately pleaded.

Haywood did not respond to Defendants' motion. Nevertheless, the Court may not grant dismissal *solely* because the motion is unopposed and instead must determine whether Defendants are entitled to relief. *See Marcure v. Lynn*, 992 F.3d 625, 631-32 (7th Cir. 2021).

### I. Sovereign Immunity

Counts V and VII plead federal claims against Defendants in their official capacities. Defendants argue that sovereign immunity bars these claims. They are correct. It is well established that a non-consenting state cannot be sued by its own citizens in federal courts. *Edelman v. Jordan*, 415 U.S. 651, 662– 63 (1974). Illinois has not waived its sovereign immunity with respect to Section 1983 claims in federal court. *See Ryan v. Ill. Dep't of Children and Family Servs.*, 185 F.3d 751, 758 (7th Cir. 1999). Sovereign immunity extends to state officials sued in their official capacities. *Ex Parte Young*, 209 U.S. 123, 159-60 (1908). That is because an official capacity claim is another way of pleading an action against the entity for which the officer is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). To the extent Haywood seeks monetary relief against Defendants in their official capacity, his claims may not proceed.

Haywood also seeks injunctive relief. In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court recognized an exception to sovereign immunity whereby "private parties may sue individual state officials 'for prospective relief to enjoin ongoing violations of federal law.'" *Sherwood v. Marchiori*, 76 F.4th 688, 693 (7th Cir. 2023). To determine whether the exception applies, the Court must assess whether the "complaint alleges an ongoing violation

of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub.*

*Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (citation omitted).

> Here, Haywood seeks an injunction requiring:

> Defendants Anthony Wills and LaToya Hughes to comply with established policies with respect to the preservation and production of video footage to the extent such video footage has been withheld by them rather than destroyed and requiring them to refrain from continuing to perpetuate the false narrative and incident report intended to protect Defendant Derek Brandt from discipline and to otherwise correct Plaintiff's record and impose those penalties established and required by rule and law to punish and deter Defendant Derek Brandt's wrongful conduct.

(SAC, p. 21). Defendants argue that this request is not related to any ongoing violation of

federal law and is not prospective in nature. The first problem is sufficient.

As the Court reads the second amended complaint, Haywood's allegations primarily

concern Officer Brandt's use of force and filing of a false report, inadequate medical care, and

the alleged spoliation of video evidence of the incident. All of these issues occurred in the

past and do not appear to correspond to any ongoing harm.

Haywood's request for injunctive relief perhaps could be read to suggest that

Defendants are acting unlawfully by "perpetuating the false narrative and incident report,"

but his allegations make clear that Officer Brandt's allegedly false charge was "expunged"

from Haywood's record. (SAC ¶ 31). If the allegedly false report has been expunged, there

does not seem to be an ongoing concern necessitating an injunction. Indeed, the *Ex Parte*

*Young* exception is simply inapplicable where a violation of federal law took place "at one

time or over a period of time in the past." *Papasan v. Allain*, 478 U.S. 265, 278 (1986). Because

there are no allegations of "continuing conduct" that must be "change[d] to comply with

federal law," the claim for injunctive relief is barred by sovereign immunity. *Watkins v.*

*Blinzinger*, 789 F.2d 474, 484 (7th Cir. 1986). Count V and Count VII's official capacity component therefore must be dismissed.

## II. Individual Capacity Claims

Haywood also brings some of his claims against Defendants in their individual capacities. In Count VI, Haywood alleges Wills was deliberately indifferent to his need for an inhaler and mental health treatment after Officer Brandt deployed the pepper spray. And in Count VII, Haywood asserts that both Wills and Hughes destroyed video evidence of the incident in violation of his right to due process under the Fourteenth Amendment.

Defendants argue that these claims must be dismissed because they are barred by the statute of limitations. They add that the second amended complaint does not describe personal misconduct and merely seeks to impose liability based on their roles as supervisors.

Defendants' first argument is difficult to resolve at present. A statute of limitations defense generally cannot be resolved on a Rule 12(b)(6) motion unless the allegations in the complaint make plain that the claim is time-barred. *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 492 (7th Cir. 2017). To determine the limitations period for Section 1983 claims, federal courts adopt the forum state's statute of limitations for personal injury claims. *Mitchell v. Donchin*, 286 F.3d 447, 450 n. 1 (7th Cir. 2002). In Illinois, the relevant statute of limitations is two years. *Id.*; 735 ILCS 5/13-202.

Defendants argue that the events at issue occurred on or around February 18, 2021, and Haywood did not file the second amended complaint until July 16, 2025, nearly four and a half years later and well outside the limitations period. At this stage of the proceedings, however, the Court is not certain the defense bars Haywood's claims. Haywood initially filed his complaint on April 14, 2022, within the limitations period. Defendants have not explained

why the claims Haywood raises in the second amended complaint would not relate back to that date. *See* Fed. R. Civ. P. 15(c)(1)(B). Moreover, if Defendants' argument is that Haywood did not raise the claim dealing with their alleged failure to preserve video evidence (Count VII), it is not clear that this claim accrued as early as Haywood's other claims arising from the incident. Recall, the general rule is that a claim under Section 1983 "accrues when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Hondo, Inc. v. Sterling*, 21 F.3d 775, 778 (7th Cir. 1994). Liberally construed, the second amended complaint suggests Haywood may not have been aware of the basis for the claim until Defendants "failed to produce material video footage and other relevant and material evidence in response to valid subpoenas served in this case." (SAC ¶ 99). Absent further factual and legal development, the Court cannot conclude the statute of limitations defense bars Haywood's claims.

Defendants' alternative argument is on stronger footing. A foundational principle of Section 1983 litigation is that individual defendants only are liable for their own misconduct. *Ashcroft*, 556 U.S. at 677. Relevant here, defendants, like Wills and Hughes, who supervise other employees cannot be held liable on a theory of vicarious liability or *respondeat superior*. *Kemp v. Fulton Cnty.*, 27 F.4th 491, 498 (7th Cir. 2022) (citing *Ashcroft*, 556 U.S. at 677). To enforce this principle, the Seventh Circuit has set out two requirements for claims against supervisors. First, there must be personal involvement on the part of the supervisor in the alleged unconstitutional conduct. *See Bostic v. Murray*, 160 F.4th 831, 841 (7th Cir. 2025) (citing *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 619 (7th Cir. 2022)). "This does not necessarily require that the supervisor directly participate in the deprivation, but it does mean that there

needs to be a connection between the supervisor's action or inaction and the violation at issue." *Id.* Second, the supervisor must also have had the requisite state of mind. *Id.*

The two claims at issue here—Counts VI and VII—concern the alleged violation of Haywood's right to medical care by Wills and the alleged spoliation of evidence by both Wills and Hughes. Starting with Count VI, an Eighth Amendment claim for inadequate medical care has two elements: Haywood must show "(1) that he suffered from an objectively serious medical condition; and (2) that the individual defendant was deliberately indifferent to that condition." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

After he was pepper sprayed, Haywood filed a grievance seeking medical care and access to his emergency inhaler. Wills reviewed the grievance and denied all relief, leading to a worsening of Haywood's asthma and mental health conditions. (SAC ¶¶ 30-33). Defendants do not dispute the seriousness of Haywood's alleged medical condition, at least for purposes of this motion. Instead, they take aim at the second element, arguing that the denial of an inmate's grievance simply does not amount to deliberate indifference. They rely principally on *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017). (Doc. 134, p. 12). That case cannot be read so broadly. True, the Seventh Circuit stated that "[p]rison officials who simply process[] or review[] inmate grievances lack personal involvement in the conduct forming the basis of the grievance." *Owens*, 878 F.3d at 563. However, that statement must be understood in light of the facts of the case, which involved a prisoner's allegations against some 44 defendants for allegedly impeding his right to access the courts. *Id.* at 561. Many of the defendants were IDOC administrative officials who weighed in on the plaintiff's concerns at various stages of the prison grievance process. *Id.* at 562. The complaint did not detail any

other conduct by these individuals. Thus, *Owens* can best be viewed as a simple application

of the principle that a plaintiff must allege personal involvement by each defendant.

But it is well established that deliberate indifference can be found where an official

knows of unconstitutional conduct yet "facilitates, approves, condones, or turns a blind eye

to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (cleaned up). It follows that "[a]n

inmate's correspondence to a prison administrator may [] establish a basis for personal

liability . . . where that correspondence provides sufficient knowledge of a constitutional

deprivation." *Id.* at 781-82 (citing *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996)). In *Perez*,

an inmate sought medical care for a persistent wound by filing a variety of grievances. *Id.* at

781. He later filed a lawsuit in which he claimed that the prison officials who reviewed and

denied the grievances were deliberately indifferent to his need for medical care. On appeal,

the Seventh Circuit held that Perez's allegations about those officials were sufficient to state

a claim because the complaint suggested that "each obtained actual knowledge" of his

serious medical condition through his "coherent and highly detailed grievances and other

correspondences" but they nevertheless failed to exercise their authority to intervene. *Id.* at

782.

So too here. Haywood, in essence, has alleged that his grievance put Wills on notice

of his need for treatment, but he refused his request for necessary medical intervention. As in

*Perez*, this suggests Wills "either approved of or turned a blind eye to his allegedly

unconstitutional treatment." *Id.* at 782. Of course, further factual development may reveal

that Wills was not deliberately indifferent to Haywood's need for medical care. *See Diaz v.*

*Godinez*, 693 F. App'x 440, 444 (7th Cir. 2017) (noting that "prison administrators who are not

part of the medical team have acted appropriately if they have referred the issue to medical

staff who could be expected to address" the issue). But in light of the Court's obligation to

accept as true Haywood's allegations at this stage of the proceedings, the Court believes he

has pleaded sufficient facts to state a deliberate indifference claim.

Turning to Count VII, Haywood alleges that Defendants violated his right to due

process by "intentionally destroy[ing] or allow[ing] the destruction of" video footage of the

incident giving rise to this litigation. (SAC ¶¶ 99-100). For present purposes, Defendants do

not dispute that the Fourteenth Amendment bars the intentional destruction of evidence

relevant to a prisoner's civil case, so the Court need not address the issue at this stage of the

case. Instead, Defendants take the more modest position that the second amended complaint

does not describe any duty on their part to retain the video footage. They also point out that

Defendant Hughes was not employed as IDOC's Acting Director until 2023, more than two

years after the incident. Finally, they represent that additional video footage has been located,

and they are in the process of producing it to Haywood's counsel.

The Court disagrees with Defendants' first argument. Haywood states that his

grievance made it foreseeable that he would file an action under Section 1983, prompting a

duty to preserve relevant evidence. (*Id.* ¶ 98). In fact, the grievance specifically requested the

preservation of video footage of the incident. (*Id.*). Defendants do not explain why these facts

would not trigger a duty to preserve evidence. *See Trask-Morton v. Motel 6 Operating L.P.*, 534

F.3d 672, 681 (7th Cir. 2008) (recognizing that a duty to preserve evidence arises when a party

knows or should know that litigation is imminent).

Defendants' next argument—that Hughes was not employed as IDOC's Acting

Director at the time Haywood filed his grievance—is noteworthy, but it is not an issue the

Court can address on a motion to dismiss. And the issue is irrelevant to the extent the second

amended complaint raises a claim based on the possibility the video footage was intentionally destroyed sometime later, potentially during the pendency of this litigation when Hughes *was* Acting Director.

Defendants also indicate that they have discovered additional footage, raising the possibility that the claim is moot. That is a welcome development but, as above, statements made in motions regarding matters outside the pleading are not a basis for dismissal under Rule 12(b)(6). The Court therefore denies Defendants' request to dismiss Count VII but will direct the parties to confer regarding this new footage and inform the Court whether this claim may be dismissed as moot.

### III. State Law Claim

Finally, Defendants ask the Court to dismiss Haywood's state law negligent spoliation claim as barred by sovereign immunity and as inadequately pleaded.

The Illinois State Lawsuit Immunity Act, 745 Ill. Comp. Stat. 5/1, provides generally that the State of Illinois is immune from suit in any court except the Illinois Court of Claims. An action against an individual state employee will be characterized as an action against the State if (1) the officers were not acting beyond the scope of their authority through wrongful acts; (2) the duty alleged to have been breached was imposed on the officers solely by virtue of their employment and was not a duty owed by all citizens, and (3) the complained-of actions involved matters ordinarily within the officers' normal and official functions. *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001) (quoting *Healy v. Vaupel*, 133 Ill.2d 295, 309, 549 N.E.2d 1240, 1246 (Ill. 1990)).

"The doctrine of sovereign immunity affords no protection, however, when it is alleged that the State's agent acted in violation of statutory or constitutional law *or* in excess

of his authority." *Leetaru v. Bd. of Trustees of Univ. of Ill.*, 2015 IL 117485, 392 Ill.Dec. 275, 32 N.E.3d 583, 595 (2015); *accord Murphy v. Smith*, 844 F.3d 653, 658-59 (7th Cir. 2016). This proviso is referred to as the "officer suit exception." *PHL, Inc. v. Pullman Bank & Trust Co.*, 216 Ill.2d 250, 260, 836 N.E.2d 351, 357 (2005). However, the Illinois Supreme Court has made clear that "a complaint seeking damages for a past wrong does not fall within the officer suit exception to sovereign immunity." *Parmar v. Madigan*, 2018 IL 122265, ¶ 26, 106 N.E.3d 1004, 1010 (Ill. 2018).

The Court agrees that sovereign immunity bars Haywood's state law negligence claim. With respect to the first prong of the test, "[a]n employee's actions are considered within the scope of employment where the alleged facts are consistent with an intent to further the state's business." *Sellers v. Rudert*, 918 N.E.2d 586, 592 (Ill. App. Ct. 2009). "When the Illinois courts speak of an act 'beyond the scope of authority,' they contemplate an employee acting not just in a wrongful manner, but sticking his nose in business where it doesn't belong." *Turpin v. Koropchak*, 567 F.3d 880, 883 (7th Cir. 2009). Here, Haywood alleges that Defendants possessed and controlled video footage of Officer Brandt's use of pepper spray, but they failed to preserve it. Haywood has not explained why matters involving the preservation of video footage do not fall within the scope of Defendants' authority as administrators of the correctional facility. Likewise, it is clear that handling prison video footage falls within the ambit of Defendants' "normal and official functions," the third prong of the test. *Richman*, 270 F.3d at 441.

Defendants focus primarily on the second factor and argue that the duty alleged here is not owed to the public generally and is dependent on the fact of their employment by the state. The Court agrees. In evaluating the second factor, Illinois uses the "source-of-the-duty"

test. That is, "[w]here the charged act of negligence arose out of the State employee's breach of a duty that is imposed on him *solely* by virtue of his State employment, sovereign immunity will bar maintenance of the action in circuit court." *Jinkins v. Lee*, 209 Ill. 2d 320, 331, 807 N.E.2d 411, 418 (2004) (quoting *Currie v. Lao*, 148 Ill. 2d 151, 159, 592 N.E.2d 977, 980 (1992)). "Conversely, where the employee is charged with breaching a duty imposed on him *independently* of his State employment, sovereign immunity will not attach and a negligence claim may be maintained against him in circuit court." *Id.*

Here, the relevant duty is the alleged duty to preserve the video footage of the incident. Defendants would not have been obligated to maintain that footage and indeed would not have been in a position to do so but for their positions with the Illinois Department of Corrections. *Cf. Jackson v. Wexford Health Sources, Inc.*, No. 3:20-CV-900, 2025 WL 3442902, at *34 (S.D. Ill. Dec. 1, 2025) (holding that a wrongful death action against an IDOC employee was barred by state sovereign immunity because the evidence did not suggest the employee owed any duty to the general public independent of his employment); *Powers v. Donathan*, 2023 IL App (4th) 220526-U, ¶ 22 (Ill. App. Ct. Sept. 13, 2023) (holding that a plaintiff's claim against defendants employed at the Rushville Detention Center for allegedly denying him adequate time at the facility's law library was barred by sovereign immunity because the defendants only had a duty to provide library access to residents of the facility and not the public at large); *see also Turner v. Miller*, 301 F.3d 599, 602 (7th Cir. 2002) (finding state law sovereign immunity barred a negligence claim where "whatever duty was owed by the defendants" to the plaintiff "existed because of" his status as a prisoner). Any duty owed to Haywood by Defendants regarding the preservation of video footage is inextricably linked to their obligations as state employees, and Haywood poses no argument to the contrary.

Therefore, his negligence claim functionally proceeds against the State rather than Defendants themselves and is barred by sovereign immunity. The Court accordingly will dismiss Count VIII.

## CONCLUSION

For these reasons, Defendants' Motion to Dismiss (Doc. 134) is **GRANTED in part** and **DENIED in part**. Counts V and VIII are **DISMISSED with prejudice**. Count VII is **DISMISSED with prejudice** against Defendants in their official capacities **only**. Judgment will be entered accordingly at the close of the case. The parties shall inform the Court, **on or before May 13, 2026**, whether the remainder of Count VII may be dismissed as moot in light of Defendants' discovery of additional video footage. Dispositive motions shall be filed **on or before June 3, 2026**.

**IT IS SO ORDERED.**

DATED:   April 30, 2026

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**