IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **KARL HAYWOOD,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ANTHONY WILLS, DEREK BRANDT, LATOYA HUGHES, and JOHN DOE CORRECTIONAL OFFICER,**<br><br>**Defendants.** | **Case No. 3:22-CV-731-NJR** |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Karl Haywood, an inmate of the Illinois Department of Corrections ("IDOC") who is currently housed at Dixon Correctional Center, brings this action under 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was housed at Menard Correctional Center ("Menard"). (Doc. 106). In his presently operative complaint, Haywood brings claims against IDOC officer Derek Brandt, Warden Anthony Wills, IDOC Director LaToya Hughes, and an unnamed IDOC Sergeant.

On April 30, 2026, the Court granted in part a motion to dismiss some of the claims against Wills and Hughes. (Doc. 142). Now before the Court is a Motion for Summary Judgment on the issue of exhaustion filed by Wills and Hughes. Separately, Haywood has moved to sanction Defendants for allegedly spoliating certain video evidence of the incident giving rise to his claims and for failing to produce certain other witnesses and documents. For the following reasons, both motions are denied.

## BACKGROUND

### A. Factual History

The Court accepts the following facts as undisputed for purposes of the summary judgment motion.

At the time relevant to the Complaint, Haywood was incarcerated at Menard Correctional Center. (SOF ¶ 1). He was transferred out of that facility on April 1, 2023. (SOF ¶ 6). Inmates at Menard may raise issues to prison officials by following the grievance procedures set out in 20 Ill. Admin Code 504.800, *et seq*. (SOF ¶ 2).

This case concerns an incident that occurred on February 18, 2021. The Court previously summarized Haywood's allegations, contained in his second amended complaint ("SAC," Doc. 106), as follows:

> On February 17, 2021, multiple inmates in Menard's East House, where Haywood resided, began throwing trash and debris from their cells. (SAC ¶ 13). Neither Haywood nor his cellmate, Lason Elliott, participated in throwing debris out of their cells. (*Id.* ¶ 16). After several inmates began to set fire to the debris, officers entered the area to quell the situation and set up cameras to document any further violations. (*Id.* ¶ 14). The officers cleaned up some of the trash but left several items of debris in front of a cell neighboring Haywood's. (*Id.* ¶ 15).
>
> The next day, Correctional Officer Derek Brandt and another officer passed by Haywood's cell and engaged in an argument with Elliott, Haywood's cellmate. (*Id.* ¶¶ 17-18). At the time, Haywood was asleep in his bunk. (*Id.* ¶ 19). As Officer Brandt and the other officer were about to leave, Elliott called Brandt a "bitch." (*Id.*). Brandt immediately turned around and sprayed pepper spray into the cell indiscriminately, hitting Haywood in the face. (*Id.* ¶¶ 19-20). The pepper spray inflamed Haywood's asthma and temporarily blinded him. (*Id.* ¶ 20). He screamed for help, but Brandt told him to "shut the fuck up," leaving him in the cell without medical attention for approximately twenty minutes. (*Id.*). Instead of arranging for prompt medical care, Officer Brandt assembled a team to conduct a forced cell extraction to transport Haywood to the medical unit. Menard's medical

> staff ultimately denied Haywood his prescribed inhaler and other treatment, allegedly in an effort to coverup the extent of his injuries. (*Id.* ¶ 26).
>
> After the incident, Officer Brandt prepared a report faulting Haywood. He stated falsely that Haywood was standing at the front of the cell with Elliott, throwing Styrofoam meal trays at him. (*Id.* ¶¶ 21-22). Officer Brandt also denied that there were any witnesses to the incident, even though another officer was with him at the time. (*Id.* ¶¶ 23-24). Due to Brandt's report, Haywood was placed in restrictive housing for five days and faced a disciplinary hearing based on the false report. (*Id.* ¶ 25). In addition, the cell where he was moved had a strong odor of mildew, and its walls were smeared with blood and feces. (*Id.* ¶ 27). Menard's staff did not give him a pillow or sheets, and the mattress smelled like urine. (*Id.* ¶ 27). The sergeant responsible, designated here as "John Doe," refused Haywood's request for cleaning supplies and ignored his concern that his mental illness would be exacerbated by the conditions in the cell. (*Id.* ¶¶ 28-29).

(Doc. 142, pp. 1-3).

Haywood filed three grievances regarding these incidents.

*Grievance 167-3-21*

On February 25, 2021, Haywood filed an emergency grievance (#167-3-21) regarding the February 18, 2021 incident. (Doc. 162-5, pp. 4-5). He requested (1) an independent investigation, (2) disciplinary action against Brandt, (3) additional medical care, and (4) a "transfer for safety" (presumably to another prison facility). (*Id.*). The grievance was reviewed by a prison counselor on March 23, 2021, who recorded that "staff" were contacted and denied the allegations. (*Id.*). Haywood's appeal of the denial of this grievance was rejected by the grievance officer on October 13, 2021. (*Id.* at p. 2). The prison's Chief Administrative Officer (CAO) concurred on October 14, 2021. (*Id.*). IDOC's Administrative Review Board denied Haywood's further appeal on January 3, 2022. (*Id.* at p. 1).

*Unnumbered Grievance*

The same day, Haywood filed a second, substantially similar emergency grievance. (*Id.* at p. 22). As in his other filing, he sought an independent investigation, disciplinary action against Brandt, medical care, and a transfer. (*Id.*). There is no indication in the record whether the grievance was reviewed by staff at Menard, but on March 19, 2021, the grievance was returned to Haywood by the Administrative Review Board for failure to provide a copy of the facility-level responses. (*Id.* at p. 21).

*Grievance 492-3-21*

On March 25, 2021, Haywood filed another emergency grievance (#492-3-21). (*Id.* at p. 19). He complained that Brandt lied about the February 18, 2021 incident in his report to get him sent to segregation. (*Id.*). Haywood requested intervention "to stop these officers from harassing me," to be transferred from Menard, and to preserve video footage from February 18, 2021. (*Id.*). The counselor who reviewed the grievance reported that Brandt denied harassing Haywood and that Haywood was found not guilty of a disciplinary infraction related to the February 18, 2021 incident. (*Id.*). After Haywood appealed, the grievance officer affirmed the counselor's response, and the Chief Administrative Officer concurred. (*Id.* at p. 18). Notably, the report, issued on April 29, 2021, does not mention Haywood's request for the facility to preserve video footage from February 18, 2021. (*Id.*). IDOC's Administrative Review Board denied Haywood's subsequent appeal on May 12, 2021. (*Id.* at p. 7).

B. Procedural History

Haywood filed his complaint in this action on April 14, 2022. (Doc. 1). The Court

later recruited counsel to represent him *pro bono*. (Doc. 22). In his second amended complaint, Haywood alleged a variety of claims against four individuals: Officer Brandt, Warden Anthony Wills, and IDOC Director LaToya Hughes, in both their individual and official capacities, and an unnamed IDOC Sergeant, presently designated as "John Doe Sergeant." Pursuant to the Court's April 30, 2026 order (Doc. 142), two claims remain against Wills and Hughes: (1) a claim that Wills was deliberately indifferent to Haywood's need for medical treatment in violation of the Eighth Amendment (Count VI), and (2) a claim that Wills and Hughes violated his right to due process by destroying certain video evidence (Count VII).

After the Court ruled on the motion to dismiss, Wills and Hughes requested leave to file a motion for summary judgment on the issue of whether Haywood had properly exhausted his administrative remedies. Haywood, for his part, sought leave to file a motion for spoliation sanctions. (Doc. 161). The Court granted the parties' requests. Both motions are now fully briefed.

## 1. SUMMARY JUDGMENT MOTION [Doc. 162]

### LEGAL STANDARDS

#### *a. Summary Judgment*

Summary judgment is appropriate where there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In determining whether a genuine issue of fact exists, the Court views the evidence and draws all reasonable inferences in favor of the non-moving party. *Ziccarelli v. Dart*, 35 F.4th 1079, 1083 (7th Cir. 2022). Once the moving party sets forth the basis for summary

judgment, the burden shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323.

*b. Exhaustion under the Prison Litigation Reform Act (PLRA)*

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). Relevant here, the PLRA "requires incarcerated individuals to exhaust available administrative remedies prior to filing lawsuits in federal court under § 1983." *Burns v. Polk*, 186 F.4th 1010, 1015 (7th Cir. 2026). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). A prisoner's failure to exhaust is an affirmative defense, so defendants can seek summary judgment on that basis. *Breyley v. Fuchs*, 156 F.4th 845, 847 (7th Cir. 2025). To prevail, "a defendant prison official must demonstrate that the plaintiff prisoner failed to exhaust the applicable grievance procedures *and* that those procedures were available to him as a matter of law." *Jones v. Lamb*, 124 F.4th 463, 467 (7th Cir. 2024) (emphasis added). The last point is key because a prisoner need only exhaust remedies that are actually available to him, and the mere existence of a grievance policy is not necessarily dispositive on the question of the availability of remedies. *See Burns*, 186 F.4th at 1015; *Hernandez v. Lee*, 128 F.4th 866, 869

(7th Cir. 2025). Accordingly, whether administrative remedies were available to a prisoner is a fact-intensive inquiry; in this Circuit, disputed factual issues may be resolved by the Court in a pre-trial *Pavey* hearing. *See Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023) (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)). However, a prisoner is entitled a jury trial on the exhaustion issue if it is "intertwined with the merits of a claim that falls under the Seventh Amendment." *Perttu v. Richards*, 605 U.S. 460, 468 (2025).

*c. IDOC Grievance Procedures*

Illinois has a comprehensive process for prisoners to raise issues within their prison administratively. *See* 20 Ill. Admin. Code § 504.800, *et seq*. The grievance procedures first require inmates to file their grievance with their institutional counselor within 60 days of the discovery or occurrence of an incident. *Id.* § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

*Id.* § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *Id.* § 504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *Id.* § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer ["CAO"] within two months after receipt

of the written grievance, when reasonably feasible under the circumstances." *Id.* § 504.830(e). The CAO is the highest ranking official at a correctional facility. *Id.* § 504.802. "The [CAO] shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.* § 504.830(e).

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the IDOC Director through the IDOC's Administrative Review Board ("ARB"). The appeal must be received by the ARB within 30 days of the CAO's decision. *See id.* § 504.850(a). The inmate must attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director [of the Department of Corrections] a written report of its findings and recommendations." *Id.* § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." *Id.* § 504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. To file an emergency grievance, the inmate must forward the grievance directly to the CAO who may determine that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. *Id.* § 504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken.

*Id.* § 504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.* § 504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." *Id.* § 504.850(f).

## Discussion

### A. Deliberate Indifference Claim

In Count VI, Haywood alleges that Wills was deliberately indifferent to his need for an inhaler and mental health treatment after Officer Brandt deployed pepper spray into his cell. (SAC ¶¶ 84-92). In his present motion, Wills argues Haywood failed to adequately exhaust this claim. He points out that the February 25, 2021 grievances (the unnumbered grievance and #167-3-21) do not identify Wills by name or allege that he was denied medical treatment in connection with the February 18, 2021 incident. Wills also says the March 25, 2021 grievance dealt with alleged retaliation from prison officers rather than any medical concerns and would not put him on notice of an issue with Haywood's medical care. Haywood responds that his grievances need not have named all individuals involved in order to maintain a claim against those individuals.

The Court finds that Haywood has sufficiently exhausted his administrative remedies as to his deliberate indifference claim against Wills. In grievance #167-3-21, filed on February 25, 2021, Haywood describes struggling to breathe after Officer Brandt pepper-sprayed him. (Doc. 162-5, p. 5). He also reported that he was denied an inhaler

for his asthma in the wake of the incident and was forced to wear pepper-spray-soaked undergarments that burned his skin for several days afterwards. (*Id.*). It is true that the grievance does not name Wills specifically, but he does not dispute that the grievance was addressed on the merits at every stage of the process. (Doc. 162, p. 9). And it is immaterial that the grievance did not name him. "Exhaustion is not intended to provide individual notice to each prison official who might later be sued; it is designed to provide the prison with notice of *the problem* and give them an opportunity to fix it." *Croom v. Hughes*, No. 23-CV-2885-NJR, 2025 WL 832213, at *4 (S.D. Ill. Mar. 17, 2025) (citing *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011)). This grievance clearly put Wills on notice of Haywood's need for medical care because he was part of the chain of individuals who reviewed it. (Doc. 162-5, pp. 4-5).

Nor did Haywood have to file a second grievance as to Wills's *handling* of his medical care, as Wills argues. The premise of Haywood's deliberate indifference claim is that Wills knew of his need for medical care because of the grievance but failed to take adequate action in response. *Cf. Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015) ("An inmate's correspondence to a prison administrator may [ ] establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation."). In Wills's view, Haywood should have separately grieved the adequacy of his response to his medical complaints. But this is not the law. It is well settled that "a previously submitted grievance will suffice to exhaust remedies for future events so long as the prisoner remained in the same situation." *Barrow v. Wexford Health Sources, Inc.*, No. 14-CV-800-NJR-DGW, 2015 WL 5010104, at *4 (S.D. Ill. Aug. 24,

2015). Here, the essence of Haywood's deliberate indifference claim is that Wills's response to the grievance did not address the medical claim. On that point, "[c]ourts have found that prison officials who are named in grievance responses, or who directly participate in fielding grievances have ample notice for exhaustion purposes." *Tackett v. Mitchell*, No. 22-CV-1260-DWD, 2024 WL 1483988, at *4 (S.D. Ill. Apr. 5, 2024). Wills, as a reviewer of Haywood's initial grievance regarding his medical care, was on notice of Haywood's concerns and had an opportunity to respond. A rule requiring Haywood to file another grievance specifically addressed to Wills's alleged failure to take appropriate action would essentially require the same harm be grieved twice—a needless exercise that is not mandated by the PLRA. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) ("Separate complaints about particular incidents are only required if the underlying facts or the complaints are different."). Accordingly, the Court holds that Haywood properly exhausted Count VI of the second amended complaint.

B. Spoliation Claim

In Count VII of the SAC, Haywood claims that Wills and Hughes violated his right to due process under the Fourteenth Amendment by failing to take steps to preserve footage of the February 18, 2021 incident or "intentionally destroy[ing]" said footage. (SAC ¶ 100). Wills and Hughes note that Haywood's only grievance related to the footage was his March 25, 2021 grievance (#492-3-21). That grievance, they say, requested officials to retain footage, but it was not a complaint regarding the footage's spoliation. Hughes, for her part, adds that she was not employed as IDOC director until April 2023, so Haywood could not have exhausted any claim against her through a 2021 grievance.

Haywood responds that his March 25, 2021 grievance contained an unambiguous request to preserve footage from February 18, 2021, sufficient to put prison officials on notice of the relief he sought. An interpretation of the PLRA's exhaustion requirement that required inmates to separately request preservation of the footage and the prison's failure to preserve it would mean that inmates would be required to file grievances preemptively for wrongs that only become apparent during the litigation process. He insists that Hughes's start date as director of IDOC is irrelevant because she bears the same preservation obligations as other IDOC officials.

Although it is a somewhat closer call, the Court finds that Haywood sufficiently exhausted his administrative remedies as to this claim. To start, all agree that Haywood's March 25, 2021 grievance sought, among other things, the preservation of video footage from February 18, 2021. (SOF ¶ 10). It is also undisputed IDOC has not produced any footage documenting Officer Brandt's deploying pepper spray against Haywood on February 18, 2021. (Doc. 170, ¶ 21). Haywood's claim fits within the mold of the medical care cases discussed above where a second grievance regarding an official's failure to properly respond to an initial grievance is not always required. Again, "a previously submitted grievance will suffice to exhaust remedies for future events so long as the prisoner remained in the same situation." *Barrow*, 2015 WL 5010104, at *4. At the time he filed his grievance, Haywood did not possess any footage of the incident. Now—after he filed his grievance and proceeded deep into discovery in this case—he remains without footage of critical portions of the incident. He did not need to file another grievance to address the possibility that IDOC officials would fail to preserve the footage.

*Cf. McClurkin v. Baldwin*, No. 17-CV-1228-MJR-SCW, 2018 WL 8578271, at *6 (S.D. Ill. Dec. 11, 2018) (holding that a plaintiff "did not need to file separate, additional grievances against" against prison officials "for failing to obtain treatment for him after reviewing his original grievance"). The underlying harm regarding his lack of access to the footage is the same in both cases.

As for Hughes, the Court understands Defendants' position that she was not responsible for preserving the footage at issue given the timing of when she became IDOC director. However, the fact that an official was not employed by IDOC at the time a grievance was filed is not necessarily dispositive of proper exhaustion. *See Barrow*, 2015 WL 5010104, at *4.[1] The Court therefore finds that Haywood properly exhausted Count VII.[2]

**2. MOTION FOR SANCTIONS [Doc. 164]**

Haywood asks the Court to sanction Defendants Wills and Hughes for failing to disclose witnesses and other evidence that would corroborate Officer Brandt's version of

---

[1] Neither side addresses § 504.810(b) of the Illinois Administrative Code, which provides that "[t]he grievance procedure shall not be utilized for complaints regarding decisions that have been rendered by the Director, such as, but not limited to, facility placement, awards of supplemental sentence credit or transfer denials, or decisions that are outside the authority of the Department, such as parole decisions, clemency or orders regarding length of sentence." Arguably, a complaint that Hughes, as director of IDOC, spoliated footage would fall within this provision and therefore would not be subject to the normal grievance requirements. *See Plumlee v. Hughes*, No. 23-CV-1880-RJD, 2024 WL 4274938, at *10 (S.D. Ill. Sept. 24, 2024) ("If the relief sought falls within the scope of § 504.810(b), Plaintiff would be released from his obligation to exhaust the administrative remedies per the language of that section."). To be clear, the Court does not base its decision that Haywood sufficiently grieved his claim against Hughes on this basis, as it was not raised by any party. Instead, the Court concludes that the alleged failure of Hughes and Wills to preserve video footage constitutes an "objectionable condition [that] is continuing," so that an additional grievance is not required. *Turley*, 729 F.3d at 650.

[2] As there are no disputes of material fact relevant to Haywood's exhaustion, the Court finds it unnecessary to hold a *Pavey* hearing. *See Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009); *McDonald v. Murphy*, No. 19-CV-230-WMC, 2021 WL 2894088, at *6 (W.D. Wis. July 9, 2021).

events and for failing to preserve video footage of the incident on February 18, 2021.

**LEGAL STANDARDS**

Haywood's motion cites Rules 37(c)(1) and (e). The former prohibits a party who failed to disclose information or a witness as required by Rule 26 from using that information or witness "unless the failure was substantially justified or is harmless." Rule 37(e), in contrast, focuses specifically on electronically stored information (ESI) and authorizes sanctions if that information "should have been preserved in the anticipation or conduct of litigation [and] is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Courts have broken this provision down into five requirements:

> (1) the information must be ESI; (2) there must have been anticipated or actual litigation that triggers the duty to preserve ESI; (3) the relevant ESI should have been preserved at the time of the litigation was anticipated or ongoing; (4) the ESI must have been lost because a party failed to take reasonable steps to preserve it; and (5) the lost ESI cannot be restored or replaced through additional discovery.

*Hollis v. CEVA Logistics U.S., Inc.*, 603 F. Supp. 3d 611, 617 (N.D. Ill. 2022).

If that standard is met and the Court finds prejudice to the other party as a result of the missing information, the Court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). A finding that a party with a duty to preserve "acted with the intent to deprive another party of the information's use in the litigation" opens the door to more severe sanctions, "including presuming that the information was unfavorable, instructing the jury to presume the information was unfavorable, or entering dismissal or default." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F.

Supp. 3d 839, 958–59 (N.D. Ill. 2021) (citing Fed. R. Civ. P. 37(e)(2)).

## Discussion

Haywood accuses Defendants of failing to turn over several categories of evidence. He primarily is concerned about the absence of video footage of the February 18, 2021 incident and a "contraband log," where the footage would have been memorialized, but he also seeks a logbook documenting Officer Brandt's rounds in the prison that day. Haywood believes the logbook would corroborate his claim that a second officer (besides Brandt) participated or was present when he was pepper-sprayed.

Starting with the video, it is undisputed that Defendants have produced numerous videos during this litigation, but none are of the incident where Brandt pepper-sprayed Haywood. (Lisa Johnson decl. ¶ 3, Doc. 164, p. 19; Doc. 166, ¶ 24). Defendants resist sanctions, arguing that there never was any such footage.

It is, of course, axiomatic that a party cannot be held at fault for failing to preserve evidence that never existed. *See Rivera v. Schultz*, 556 F. App'x 500, 501 (7th Cir. 2014); *Mason v. Martin*, No. 22 CV 3774, 2023 WL 12061874, at *3 (N.D. Ill. Nov. 14, 2023); *Inter-Med, Inc. v. ASI Med., Inc.*, No. 09-CV-383, 2010 WL 2854288, at *2 (E.D. Wis. July 19, 2010). Accordingly, "[a] key to considering sanctions for an ESI violation requires a demonstration by a preponderance of the evidence that the missing footage existed in the first place." *Tatum v. Hunter*, No. 22-CV-2411-DWD, 2026 WL 2640531, at *2 (S.D. Ill. Sept. 8, 2026). "For spoilation sanctions to be appropriate, it is a necessary, but insufficient, condition that the sought-after evidence actually existed and was destroyed." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 493 (S.D.N.Y. 2022)

(citation omitted).

Defendants observe that Wills testified at his deposition that he directed officers posted on the cellblock's catwalk to use handheld cameras to identify prisoners who were causing disruptions on February 17, 2021, the day before the incident between Brandt and Haywood. (Anthony Wills dep., Doc. 166-6, pp. 9, 25). After that date, officers only used cameras when a tactical unit had to remove a prisoner from his cell. (*Id.*). Wills also testified that Menard's East House, where Haywood was housed, did not have static cameras installed. (*Id.*). He explained that footage from the hand-held cameras would be saved and documented in a "contraband logbook." (*Id.* at p. 25).

Haywood, in turn, testified that he recalled seeing cameras on February 18, 2021. He explained that every time an officer would go onto any gallery in the prison "somebody go on the catwalk following behind them with a camera." (Haywood dep., Doc. 166-5, p. 61). He recalled that the officers carrying cameras were Caucasian and wore IDOC uniforms. (*Id.*). In this respect, his testimony lines up with Wills's, supporting the idea that officers used hand-held cameras and that there were not static cameras in his wing of the prison. But on the whole, Haywood's recollections regarding the footage are vague at best. Critically, he never testified specifically that he recalled any officer recording the incident with Brandt on February 18, 2021. Perhaps, this is because he was asleep in his bunk when he was struck by the pepper spray. (*Id.* at p. 85) ("But I can't say . . . who was there – who was on the catwalk [] following behind him, I can't say that because I was 'sleep."). His argument that the footage existed appears to be based largely on his observation that "anytime [the TACT team] is inside the building . . . somebody

[is] going to be on that catwalk with a camera rolling at all times." (*Id.*). Brandt, for his part, could not recall whether officers with cameras were on the catwalk at the time he deployed pepper spray into Haywood's cell. (Derek Brandt dep., Doc. 166-1, p. 20).

The Court is unpersuaded that a recording of the pepper spray incident ever existed. *See Tri-County Motors, Inc. v. Am. Suzuki Motor Corp.*, 494 F. Supp. 2d 161, 177 (E.D.N.Y. 2007) (explaining that "speculative assertions as to the existence of [evidence] do not suffice to sustain a motion for spoilation." Wills testified that on the date of the incident, officers only recorded footage of cell extractions. And Brandt could not recall anyone taking footage when he walked by Haywood's cell. Haywood's belief that there is footage is based on his observations and perceptions of general practice but does not specifically corroborate the existence of footage in this instance. Accordingly, sanctions under Rule 37(e) are not appropriate at this juncture and further analysis is unnecessary. *See White as Indep. Adm'r of Brown v. Powell*, No. 3:21-CV-50094, 2026 WL 1091717, at *6 (N.D. Ill. Apr. 22, 2026). The Court is willing to revisit this conclusion at a later stage of the case, however, should evidence regarding the footage become stronger. Evidence from the contraband logbook may well burnish Haywood's claim that footage existed.

On that note, Haywood also seeks sanctions against Defendants for failing to turn over that logbook. Defendants respond that they were sued in their individual capacities, and they cannot be held responsible for Menard's deficient response to a subpoena issued by Haywood for the records. Yet the record does not contain information about the contents of Menard's response. Haywood states that he "requested but has not received any part" of either the gallery logbook signed by Brandt (documenting his rounds on the

cellblock) or the contraband logbook described by Wills. (Johnson decl. ¶¶ 5-6). It is not clear whether Menard's response to the subpoena indicated that no records existed or whether they were being withheld for some reason. The Court therefore will direct the parties to clarify the issue.

Haywood also seeks sanctions based on Defendants' alleged failure to identify and disclose the identity of a second officer who was with Brandt on February 18, 2021. As above, Defendants contend that Haywood's motion improperly presumes that a second officer existed.

The Court agrees with Defendants that sanctions are not warranted on this basis. The record simply does not establish that a second officer accompanied Brandt or was present when he pepper-sprayed Haywood. Haywood alleges in his complaint that a second officer was present and "passed by [his] cell" (SAC ¶¶ 17-18), but he did not mention another officer being present in his grievances, which centered on Brandt (Doc. 162-5). In a review after the incident, the investigator who interviewed Haywood and his cellmate did not note any mention of another officer. (Doc. 166-2, pp. 12-17). And at his deposition, Haywood testified that was asleep at the time he was pepper-sprayed; when he woke up, nobody was in front of his cell. (Haywood dep., Doc. 166-5, pp. 84-85). If Haywood was sure another officer was present, one would think he would have mentioned it. Brandt, for his part, testified that he was working alone on the gallery at the time of the incident. (Brandt dep., Doc. 166-1, pp. 22, 27).

Haywood notes that Defendants produced videos of officers working in groups of three on the cellblock the day before the incident. He also testified that he believed other

officers *would* be present. (*Id.* at p. 85). But the fact that officers were working in groups previously only weakly supports the idea that multiple officers joined Brandt the day of the incident. His testimony regarding the typical presence of additional officers also appears to refer to the presence of another officer on the *catwalk* "following behind [Brandt] every step" rather than on the gallery near the cells with Brandt. (Haywood dep., Doc. 166-5, p. 85). The catwalk is located ten to twenty feet away from the cells and is physically separated from them. (Brandt dep., Doc. 166-1, p. 20). Haywood has not demonstrated that any other officer besides Brandt appeared in front of his cell during the incident. Therefore, his request for sanctions for failing to identify that individual must be denied. Again, the Court is willing to revisit this conclusion if additional evidence (such as the gallery logbook) becomes available.

## CONCLUSION

For these reasons, Defendants' motion for summary judgment on exhaustion (Doc. 162) is **DENIED**. Haywood's motion for sanctions (Doc. 164) also is **DENIED**. It is further **ORDERED** that **on or before October 30, 2026**, the parties shall file a joint status report regarding the production of the two logbooks sought by Haywood and proposing a dispositive motion deadline.

**IT IS SO ORDERED.**

**DATED: October 16, 2026**

Nancy J. Rosenstengel

**NANCY J. ROSENSTENGEL**
**United States District Judge**